## J. P. THURMAN ET AL. *v.* MONROE POINTER.

1. SPECIFIC PERFORMANCE.  *Damages.*  *Failure to perform without excuse.*

   Where the owner of land which is rented for three years has an option to cancel the lease within a given time, and before the expiration of that time contracts to sell to another, and yet does not cancel, his inability to give possession because of the lease is no answer to a bill for specific performance and damages.  Nor can he compel the other party to accept a conveyance of the land with the lease.  And it is immaterial that the purchaser knew of the lease at the time he made the contract.

2. SAME.  *Inability to perform.*  *Fault of vendor.*

   A vendor of land, as an excuse for his refusal to perform, cannot avail of his neglect to do that which was in his power, and which if done would have enabled him to execute the contract.

3. POSSESSION.  *Meaning of term.*  *Construction of parties.*

   In a contract for the sale of land the language, "possession shall be given" when used without qualification, means that actual possession shall be delivered, particularly when the dealings between the parties exclude any other construction.

FROM the chancery court of Tunica county.

HON. W. R. TRIGG, Chancellor.

The appellee, Pointer, owned a valuable plantation in Tunica county, Mississippi, and in 1886, leased it to C. A. Cox, for the three following years, but reserved the right to cancel the lease as to 1888 and 1889, by giving the lessee notice on or by November 15, 1887.  After this he authorized A. J. Martin, of Memphis, Tenn., to act as his agent until November 14, 1887, to sell the plantation for $25,000, of which he required that $5000 should be paid cash.  On said 14th of November, 1887, as authorized, said Martin, in the name of his principal, made a valid contract in writing with appellant, J. P. Thurman, for himself and son, by which they became purchasers of the plantation on the terms above stated.  Referring to the payments and the possession of the land, this contract contains the following language: "$5000 to be paid cash on the 1st of January, 1888, when possession of the place shall be given to me."

The contract closed with this language : "provided title is found good, and taxes paid up to 1st of January, 1888."

About mid-day on the 15th of November, 1887, Pointer, who was then in Memphis, was informed of the contract of sale of the plantation by his said agent. Cox resided on the plantation thirty-three miles south of Memphis, only a mile and a half from Hollywood, a station on the railroad. A regular passenger train left Memphis on this road at 4.45 in the afternoon of each day, arriving at Hollywood at 5.59, all of which was known to Pointer, and he knew where Cox was, for he had left him on the place that day, having gone to Memphis on the morning train. Pointer, therefore, had ample time and opportunity to cancel the lease of Cox on that day, as was his right. But he neglected to cancel it, and Cox remained on the plantation, his lease for the years 1888 and 1889 having become absolute.

Prior to making said contract of purchase, Thurman knew that Cox was in possession under said lease. On November 18, 1887, Pointer showed Thurman the written lease, and agreed to carry out the contract of sale if Thurman would accept the plantation with the lease. Thurman declined this and insisted that the lease should be annulled. On the 21st of November, Thurman & Son wrote Pointer that they had caused the title to be examined, that it was satisfactory, and that on January 1, 1888, they would be prepared to make the cash payment and execute all proper papers, and would expect him to comply with his part of the agreement.

To this Pointer answered that he would make no deed to the property unless Cox was satisfied.

Thurman & Son replied by letter that they demanded to be put into possession January 1, 1888, freed from the Cox lease.

On December 31, 1887 (January 1, being Sunday), the parties met at Memphis, and Thurman & Son tendered to Pointer $5000, the cash payment, together with notes and a trust-deed properly executed to secure the deferred payments, and demanded a deed with general warranty, in accordance with the contract. Pointer tendered them such a deed, but stated that he would not deliver it unless they would accept the same with the Cox lease and notes,

which he offered to transfer and deliver with the deed. The Thurmans declined this, but offered to accept the deed without the lease, if delivered unconditionally. This being refused, the parties separated and nothing more was done towards the execution of the contract. On Monday January 2, 1888, the bill in this case was filed by Thurman & Son for specific performance, and for damages on account of the two unexpired years of the lease. The rent notes of Cox were for $2200 for each year, and he was to keep the property in repair. The bill alleges that the rental value of the plantation is $5000 per annum, but that more could be made by cultivating it with hired labor and croppers, as complainants had expected and arranged to do.

Defendant demurred to the bill. The demurrer being overruled, he answered admitting substantially the facts as above set forth, except as to the time and opportunity for cancelling the lease on November 15, 1887, after the defendant was informed of the contract of sale made by his agent. The testimony shows that he had such time and opportunity. It further shows that the rental value of the plantation had increased 15 or 20 per cent. after the execution of the lease to Cox.

On September 25, 1889, the cause was finally heard on pleadings and proofs, and the court entered a decree in favor of the defendant dismissing the bill. From this decree complainants appeal.

*Perkins & Percy,* for appellants.

1. A valid contract for the purchase of the land was made between the parties November 14, 1887. It stated all the terms. The rights of the parties must be decided by their respective duties and obligations under that contract as they existed on that day.

2. If a vendee contracts for the delivery to him of possession, when it is known to both parties that constructive possession only can be given, then only such possession is required. But that is not the case here. At the time of making the contract of sale Pointer had the power to cancel the lease, so as to be able to deliver actual possession. It was not necessary for Thurman to stipulate specifically for the cancellation of the lease. It was incumbent on

Pointer to cancel it as a part of his agreement. A contract to do a thing includes an agreement to perform every act that is necessary and incidental to it.

3. If there is any doubt as to the fact that the words of the contract meant the delivery of actual possession, this is settled against the defendant by the construction which the parties themselves placed upon the language. Pointer limited the time within which his agent might sell to the 16th of November, 1887, the last day within which he might cancel the lease. He also construed Thurman's letter of November 21, as a demand for actual possession, not because of any express stipulation, but because the letter referred to the contract which meant that. Where language is doubtful, the interpretation of the parties is of great weight. *Chicago* v. *Shelton,* 9 Wall. 50 ; 2 Ib. 728 ; 10 Ib. 367.

4. The proviso, " If the title is found to be good," etc., settles the meaning of the word possession, because the title would not be good without possession. The word possession got into another part of the contract solely for the purpose of fixing the time when actual occupancy should begin.

5. The argument of the opposite counsel is inconsistent. They claim that Thurman knew of the lease, but not of Pointer's right to cancel. *Ergo,* Thurman contracted for constructive possession. And yet they say that, as the lease had two years to run and Thurman knew this, it was but fair, if he wanted the place free from the lease, that he should have so stated in his offer. How could he expect to get the place free from the lease unless he knew that Pointer had reserved the right to cancel it?

Counsel do not rest on either theory, but claim the benefit of both, and the two are at variance. But this is immaterial. Pointer, by making the contract, represented that his title was good and that he could deliver possession on January, 1888, and Thurman relied on this. And, as a matter of fact, Cox did not have an absolute lease, and Pointer could have cancelled it.

6. The case of *James* v. *Lichfield,* L. R. 9 Eq. 51, was relied on by defendant in the court below. Mr. Pomeroy says that case was

overruled in *Cabellero* v. *Henty*, L. R. 9 Ch. 447.    See Pom. Specif. Perf. § 443, note 2.

Equity has jurisdiction to award specific performance, with compensation or damages in cases of this character.    Ib. §§ 434–437.

We seek damages, not as independent relief, but as incidental to the principal relief.    Ib. § 436.

Counsel uses the expression, "one who knowingly buys a bad title," and that language correctly represents the line of authorities relied on by them.    But Thurman bought a good title.    It was good when he purchased.    If Pointer had cancelled the lease as he bound himself to do, could Thurman have rejected the title ?

7. Thurman did not by implication or otherwise bind himself to take the place subject to the lease.    Even if he had done this in his letter of November 21, as insisted, he could have fallen back on the original contract, if Pointer had not changed his position by reason of the letter.    *Traver* v. *Halsted*, 23 Wend. 66.

8. Grant that the words, "provided title is found to be good," stood for the benefit of the vendor as well as for the vendee, they certainly did not justify the vendor in so dealing with a good title as to make it invalid.

*Calvin Perkins*, of counsel for the appellant, made an oral argument..

*Shands & Johnson*, for appellee.

1. One seeking performance of a contract which he knows cannot be specifically performed, has no standing in a court of chancery. *Hatch* v. *Cobb*, 4 Johns. Ch. 559 ; 5 Ib. 193 ; 11 Paige, 277.

Specific performance cannot be invoked to allow compensation to him who knowingly buys a bad title or an encumbered estate.

Thurman proposed to buy the land, knowing of the lease, and did not stipulate in regard to that.    Under those circumstances, the law is settled that he must take the property with the burden, or not at all.    Pom. Specif. Perf. § 442 ; *James* v. *Lichfield*, L. R. 9 Eq. 51 ; *Peeler* v. *Levy*, 26 N. J. Eq. 330 ; 75 Ill. 100.

2. The provision that possession was to be given by January 1, 1888, was not a stipulation that Pointer would cancel the lease.    It

is not shown that Thurman knew that the right of cancellation existed. If Thurman wanted the place free from the lease, he should have so stated in his offer of purchase.

Possession could have been given by assigning the lease and having the tenant attorn. Bouvier's Law Dic., " Possession."

On November 21, Thurman writes Pointer that he finds the title good, and accepts. He then knows that the time has passed for cancelling the lease, and yet says nothing about it in his letter. He then takes the place with the lease, and is not entitled to specific performance with damages.

3. Nor are complainants entitled to simple specific performance. On November 21, they accepted the title, knowing they could not get actual possession. If the contract means actual possession, the proviso that the title should be good relieved both parties. Complainants found the title not good, according to their interpretation, and accepted it, but now propose to force the defendant to make it good according to the way they interpret the contract. This is too one-sided to be equitable. On this point see *Williams* v. *Edwards*, 2 Sim. 78 ; Pom. Specif. Perf. 163.

4. Pointer offered to do all that the terms of the contract required of him. Complainants, by refusing to accept the deed and rent notes, lost their right to that which was offered them. *Benedict* v. *Lynch*, 1 Johns. Ch. 376.

5. It must be borne in mind that the circumstances have materially changed since the tender of performance by Pointer. The property has enhanced, and the rental value has considerably increased. Certainly it would be inequitable as against defendant now to enforce specific performance. Pom. Specif. Perf. §§ 384, 485 ; *Brazier* v. *Grats*, 6 Wheat. 528.

*Eugene Johnson*, of counsel for appellee, argued orally.

CAMPBELL, J., delivered the opinion of the court.

This is a clear case for specific performance with damages for unwarranted delay. The unmistakable interpretation of the contract of the parties is that delivery of actual possession of the land

was stipulated for. This is the primary meaning of the term, and the natural suggestion from its use when nothing is shown to vary it, and any other meaning is excluded in the dealing between these parties. The fact that Mr. Pointer bounded the time when his agent might sell the land by the period in which he (Pointer) might lawfully cancel the lease to Cox, shows that he had in contemplation a sale that would give the purchaser possession free from the lease, and the failure of Thurman to mention the rent notes in his offer to buy, shows that the possession he had in view was an actual one.

The stipulation for good title had reference to the fee in the land, and not to the possession. If Pointer had cancelled the lease to Cox, and Thurman had refused to comply with his contract on the ground that his purpose in buying was to secure the benefit of the lease for the next two years, and that the cancellation of the lease by Pointer had defeated his object and released him from his contract, his position would have been utterly indefensible. Upon the facts shown he would have been compelled to perform his contract, and, as such would have been his liability, he must have a corresponding right.

This is not the case of one contracting for what he knew the seller could not convey. As Pointer proposed to sell, Thurman had just ground to assume that he could deliver possession, as well as convey title ; and in truth it was in the power of Pointer to cancel Cox's lease, and he cannot avail of his failure to do what he could have done as an excuse for his refusal to execute the contract, which he could undoubtedly have enforced against the other party.

It is not inequitable to specifically enforce the contract, and justice demands that it shall be done, with damages for the unjustifiable delay to do what should have been promptly done.

*Reversed and remanded, to be proceeded with in accordance with this opinion.*